IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br>    Plaintiff | :<br>:<br>:<br>: |
| v. | : CIVIL NO. 1:09-CV-1473 |
| ROBERT GLENN BARD and<br>VISION SPECIALIST GROUP, LLC,<br>    Defendants | :<br>:<br>:<br>: |

*M E M O R A N D U M*

*I.     Introduction*

Presently before the court is a motion for summary judgment (Doc. 99) filed by Plaintiff, the Securities and Exchange Commission ("SEC"). The SEC seeks entry of summary judgment; an order finding Defendants Robert Glenn Bard ("Bard") and Vision Specialist Group, LLC (collectively, "Defendants")[1] liable for violating various securities laws;[2] and an order permanently enjoining Defendants and other persons in concert with Defendants from further violations of these acts. The SEC also seeks disgorgement of profits, with prejudgment interest, a civil penalty, and post-judgment interest on any delinquent amounts. After careful consideration, we will grant the motion.

---

[1] It is undisputed that Vision Specialist acted by and through Bard, and was controlled by Bard, at all relevant times. Hence, we make no distinction between the conduct of Vision Specialist and the conduct of Bard.

[2] The specific provisions at issue are as follows: § 17(a) of the Securities Act of 1933 ("Securities Act"), § 10(b) of the Exchange Act of 1934 ("Exchange Act"), and Rule 10b-5 thereunder, and §§ 206(1) and 206(2) of the Investment Advisers Act of 1940 ("Advisers Act").

*II.*     *Discussion*

Rule 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). We will examine the motion under the well-established standard. See, e.g., Meditz v. City of Newark, --- F.3d ---, 2011 WL 4470677 (3d. Cir. 2011). In order to establish that summary judgment is proper, the SEC must show that the undisputed facts prove that Defendants violated the laws at issue. We will first examine whether the SEC has shown a violation of the Securities Act and the Exchange Act. We will then turn to the Advisers Act.

To establish a violation of § 17(a) of the Securities Act, § 10(b) of the Exchange Act, and Rule 10b-5 thereunder, the SEC must make the following showings: (1) that Defendants used an instrumentality of interstate commerce, (2) that Defendants made false or misleading statements or omissions of fact,[3] (3) that said statements or omissions were material, (4) that said conduct was done in connection with the offer, purchase, or sale of securities, and (5) that Defendants had the requisite intent. See 15 U.S.C. § 77q(a); 15 U.S.C. § 78j(b); 17 C.F.R. 240.10b-5; Aaron v. SEC, 446 U.S. 680, 687-88, 697 (1980). There is no dispute that Defendants used instrumentalities of interstate commerce, including the Internet, the telephone, fax lines, and mail.

---

[3] The parties both acknowledge that the second prong of this test would also be satisfied by a showing that a defendant otherwise employed any device, scheme, or artifice to defraud, or engaged in any transaction, practice, or course of business which operates as a fraud or deceit. In this case, it is unnecessary to consider each of these alternatives.

Defendants also admit to making false statements, although they contend that the false statements were not material and were not made in the offer, purchase, or sale of securities. Defendants also claim that there is an issue of material fact concerning intent.

Aside from a conclusory assertion that "Mr. Bard's missatements were not material," (Doc. 110 at 13), Defendants' brief does little to address the element of materiality. Defendants argue that "Mr. Bard's misrepresentations to his clients did not play a material role in the loss that the accounts experienced[,]" (id. at 11), but they fail to cite any authority defining materiality in such terms. We note that, in a case interpreting other rules promulgated under the Exchange Act, the Supreme Court has held that a fact is material if there is a "substantial likelihood" that the fact at issue "would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." TSC Indus., Inc. v. Northway, Inc., 426 U.S. 438, 449 (1976). Applying this standard to the instant case, we conclude that the undisputed facts establish the materiality of Mr. Bard's false statements.

Specifically, Bard admits that he made false statements to 33 clients, on 146 occasions, over the course of two and a half years, misrepresenting the value of their accounts by an approximate total of $1,895,200. He also admits falsely indicating that his clients' accounts had holdings in a type of security that they did not actually hold. These admissions alone are sufficient to support our conclusion. A reasonable investor would certainly consider it important to know the amount of funds in his or her account, and the type of securities held. The record contains additional evidence that bolsters our

conclusion, but no further discussion is necessary.  Reasonable minds could not differ over the conclusion that the false statements were material.

Defendants contend that "the false statements relating to account values took place after the securities were purchased," and therefore, they were not made in connection with the offer, purchase, or sale of securities.  (Doc. 110 at 13).  This argument is unavailing.  In order to properly apply the "in connection with" element, we examine whether the "scheme to defraud and the security coincide."  SEC v. Zandford, 535 U.S. 813, 822 (2002).  In this case, the undisputed facts show that Defendants' false statements coincide with securities.  For instance, Bard admits that he modified documents to show holdings in a security identified as TCUUX, although none of his clients did, in fact, have holdings in TCUUX.  Bard also admitted to making false statements about the value of his clients' accounts.  His fraud related directly to his work as a financial advisor.  Furthermore, throughout the period of time in which he engaged in fraud, he continued to purchase and sell securities.  He attracted and maintained clients by relying on his reputation as a morally upright and successful financial advisor, a reputation that he could not have earned without the ability to purchase and sell securities.  Hence, Bard's false statements coincide with securities, and the "in connection with" element is satisfied.

Finally, with respect to the element of intent, we find no issue of material fact.  The requisite intent, scienter, includes a variety of mental states, such as intent to deceive, manipulate, or defraud, or in some circumstances, reckless disregard for

misleading statements. Ernst & Ernst v. Hochfelder, 425 U.S. 185, 193 n.12 (1976). In this case, the undisputed facts show that Bard, an experienced investment advisor, significantly and repeatedly misrepresented the value of his clients' accounts, and the record is utterly devoid of any evidence of innocent mistakes. To the contrary, all the evidence suggests that Bard acted deliberately. Indeed, Bard admits that he fabricated and modified documents, to reflect holdings that his clients did not, in fact, hold, and that he overstated the value of their accounts. Therefore, we must reject Defendants' conclusory assertion that an issue of material fact exists. We have no difficulty concluding that the undisputed facts establish scienter.

Sections 206(1) and 206(2) of the Advisers Act set forth fiduciary standards of conduct. The SEC contends that Defendants have violated these laws, which prohibit investment advisors from using "any device, scheme, or artifice to defraud any client or prospective client," and from engaging "in any transaction, practice, or course of business which operates as a fraud or deceit upon any client or prospective client," respectively. See 15 U.S.C. § 80b-6. According to the SEC, undisputed evidence establishes that Defendants violated these provisions. Defendants do not dispute the SEC's argument on this point. Upon our own review of the undisputed facts, we agree that Defendants' violations of these laws are clear. Therefore, the SEC is entitled to summary judgment.

Having concluded that liability is established, we will turn to the question of remedies. As previously noted, the SEC seeks a finding of liability, a permanent

injunction, disgorgement of profits, a civil penalty, prejudgment and post-judgment interest on any delinquent amounts.

A permanent injunction is appropriate if the SEC establishes a reasonable likelihood that Defendants, if not enjoined, will repeat their illegal conduct.  We have considered a variety of factors, including the degree of scienter, the recurrent nature of the fraud, Defendants' recognition of the wrongful conduct, assurances against future violations, and the likelihood of future violations.  We conclude that a permanent injunction is warranted in this case.

The SEC seeks disgorgement of all fees taken from Defendants' clients during the pendency of the fraud, a total of $852,383.  We are not convinced that this sum is a reasonable approximation of profits causally connected to the violation.  Although we agree, to some extent, with the SEC's assertion that Bard would have lost clients if the truth had been known, the evidence does not indicate that Bard would have lost *all* of his clients, or lost the ability to earn fees *completely*.  We will therefore order disgorgement of a lesser amount of the fees, specifically, $450,000.00.

The SEC has also requested a civil penalty.  We find that a civil penalty appears to be appropriate.  However, in determining the appropriate sum for such a penalty, we should consider many factors, including the egregiousness of Defendants' conduct, the degree of scienter, the recurrent nature of the fraud, Defendants' degree of cooperation with authorities, the risk of substantial losses created by Defendants' conduct, and Defendants' current and future financial condition.  We find that, at this

juncture, the parties have not presented enough information to permit us to identify a specific sum of money that would make a reasonable civil penalty in this case. Therefore, we will order a hearing on this issue.

Finally, we will grant the SEC's request for prejudgment interest on the disgorgement obligation, calculated in the same manner that the IRS calculates tax underpayments. Once we have determined the total sum of Defendants' obligations, we will issue an order providing that, if they fail to satisfy the obligations, they shall pay post-judgment interest on any delinquent amounts.

We will issue an appropriate order.


/s/ William W. Caldwell
William W. Caldwell
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

SECURITIES AND EXCHANGE  :
COMMISSION,  :
     Plaintiff  :
      :
     v.  :  CIVIL NO. 1:09-CV-1473
      :
ROBERT GLENN BARD and  :
VISION SPECIALIST GROUP, LLC,  :
     Defendants  :

*O R D E R*

AND NOW, this 10th day of November, 2011, upon consideration of Plaintiff's motion for summary judgment (Doc. 99), and pursuant to the accompanying memorandum, it is ORDERED as follows:

    1.     Plaintiff's motion for summary judgment (Doc. 99) is GRANTED.

    2.     The Clerk of Court is direct to enter judgment in favor of Plaintiff and against Defendants.

    3.     Defendants are hereby found liable for violations of § 17(a) of the Securities Act of 1933, § 10(b) of the Exchange Act of 1934, and Rule 10b-5 thereunder, and §§ 206(1) and 206(2) of the Investment Advisers Act of 1940.

    4.     Defendants, and all persons in concert or participation with them who receive actual notice of this order by personal service or otherwise, are permanently restrained and enjoined from violating, directly or indirectly, § 17(a) of the Securities Act of 1933, § 10(b) of the Exchange Act of 1934, or Rule 10b-5 thereunder, or §§ 206(1) and 206(2) of the Investment Advisers Act of 1940.

    5.     Defendants are jointly and severally liable for disgorgement of $450,000.00, together with prejudment interest thereon.

6. Instructions for payment shall be set by future order. Defendants' payment obligation shall not take effect until the court has set the final amount for their total obligation.

7. While a civil penalty appears to be appropriate, a hearing is required to determine a reasonable amount, given the fact that we lack information as to Defendants' current and future financial condition, and other factors that bear on this decision.

A hearing will be conducted on Tuesday, December 13, 2011, at 9:30 a.m.


/s/ William W. Caldwell
William W. Caldwell
United States District Judge